UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 19-mc-23851-EGT

IN THE MATTER OF THE EXTRADITION
OF ROBERTO GUILLERMO BRAVO
_____/

### BRAVO'S RESPONSE TO GOVERNMENT'S TWO NOTICES OF OTHER AUTHORITY

**ROBERTO GUILLERMO BRAVO**, through his undersigned counsel, respectfully responds to two Government Notices of Other Authority. Both "Other Authority" pleadings refer to the civil case, *Camps, et. al. v. Bravo,* Case No. 20-cv-24294-LFL (S.D. FL) brought by relatives of certain prisoners who were involved in the August 1972 events in Trelew.[1]

### POLITICAL OFFENSE EXCEPTION

The Government has previously acknowledged that "the civil case is entirely separate from the extradition case."[2] Not only is the civil case entirely separate, it is different in highly significant ways. Moreover, because of pre-trial rulings in the civil case, there are significant factual differences between the extradition proceedings and the civil case.[3]

---

[1] The first pleading, DE 48, was filed on July 11, 2023 and attached the Court's June 30, 2023 Order on Equitable Tolling). The second pleading, DE 49, was filed on July 13, 2023 and contained two Exhibits: the Court's Order Denying Post-Trial Motions; and the Amended Judgment.

[2] See DE 43, p. 2.

[3] *See*, e.g., CVDE 107, *Order on Evidentiary Issues*, filed on June 17, 2022.

The civil case did not deal in any way with a critical – and we believe, dispositive – extradition issue, that the Argentine charges against Mr. Bravo constituted a political offense. *See* Bravo I, DE 62, p. 20.[4] Article 4 of the Extradition Treaty, "Political and Military Offenses," provides in Section 1 that "Extradition shall not be granted if the offense for which extradition is requested is a political offense."

We have previously briefed this issue in both the Memorandum in Opposition to Extradition (DE 34) and the Post-Hearing Memorandum In Opposition To Extradition (DE 38) which we filed in the instant case, we discussed in detail the facts and law which called for a finding that the political offense exception to extradition applies in this case and bars the extradition of Mr. Bravo.

The political offense exception was not relevant in the civil trial, but nevertheless, two of the Plaintiffs' experts provided strong support for the political upheaval that was prevalent around the time of the Trelew incident and thus, proof of the political offense.

For example, Professor James Brennan was retained as an expert on the socio-political situation in Argentina at the time of the Trelew incident. His report stated, in pertinent part:

> **17. The Cuban Revolution further polarized a deeply polarized society. In addition to the "Peronism question" a uniquely Argentine controversy about a uniquely Argentine political movement, the guerrilla war led by Fidel Castro and Argentina's native s. on, Ernesto "Che" Guevara, against the dictatorship of Fulgencio Batista and the subsequent revolutionary reforms on the island and entry into the socialist bloc, revitalized the Argentine left and encouraged revolutionary strategies directed especially against military**

---

[4] To avoid confusion, we shall refer to the 2010 extradition case as Bravo I, and to this case as "the instant case" or Bravo II.

rule. The proscription of the country's largest political force, Peronism, by the military governments, the increasing recourse to violence by the security forces against all forms of political mobilization and social protest, as well as the international demonstration effect Cuba and revolutionary movements in Latin America and elsewhere in the Third World had led to both the growth of the left and the adoption of direct-action tactics which included everything from social protest to armed struggle.

\* \* \* \*

20. Not all the violence of the 1970s was perpetrated by the military, the revolutionary left employed it as well though it was typically of a qualitatively different nature than the "terrorism" that the military accused it of. The Cordobazo certainly had the effect on the left of both creating new organizations and abandoning political strategies in favor of those of direct action, whether in the form of social protest or armed struggle. With democracy suspended and with the epic quality of the Cordobazo a source of inspiration, new groups such as the Ejército Revolucionario del Pueblo (ERP) and the Montoneros adopted violent tactics in pursuit of a transformation of Argentina, what its mainly youthful cadres envisioned as the end of military rule and the establishment of a socialist state. These tactics included the launching of a rural-based guerrilla war in the Northwestern province of Tucumán, kidnappings to finance revolutionary activities, and attacks on military bases. The Peronist Montoneros also adopted a policy of targeted assassinations of enemies in reprisal for the murder of Montonero militants, an internal civil war of sorts within the Peronist movement.

*See* Expert Report of Professor James Brennan.

Another expert retained by the Plaintiffs, Maximo Langer, wrote in his report:

13b. There was also no criminal accountability in this period. Immediately after the events of August 22, 1972, there was a military investigation of the members of the military who participated in the case, but it did not hold anyone accountable for the shootings and the killings. Also, an amnesty issued in May 1973, *(LAW 20508)* for all crimes committed for political motives that could include the politically-motivated actions by members of the military, barred criminal accountability at this time.

See Excerpt from Report of Maximo Langer.[5] We also discussed in detail that, while the initial burden of proof is on Mr. Bravo to establish the essential elements of the political offense exception, once established, the burden shifts to the Government to prove the crime charged in the Complaint was not of a political character, and they had failed to carry their burden.

## CONCLUSION

We urge that greater weight be awarded to the issues raised herein and to the arguments advanced in our prior pleadings. Based on those arguments, this Honorable Court should refuse to grant extradition.

Respectfully submitted,

NEAL R. SONNETT, P.A.
Attorneys for Roberto Guillermo Bravo
1581 Brickell Avenue, Suite 1804
Miami, Florida  33129-1240
Telephone:   305-358-2000
Fax:             888-277-0333
Email:          nrslaw@sonnett.com


By   /s/  Neal R. Sonnett
  NEAL R. SONNETT
  Florida Bar No. 105986

---

[5] We have not included the full reports of these experts because of their length, but if the Court wishes to review the full reports, we will promptly deliver them to Chambers.

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2023, I electronically filed the foregoing document with the Clerk of the Court and all counsel of record using CM/ECF.

By: /s/ Neal R. Sonnett
NEAL R. SONNETT